JASON J. KENNEDY, ESQ.; SBN: 265391
Jason@JJKLegal.com
KENNEDY LAW FIRM
3444 Camino del Rio North, Suite 106
San Diego, California 92108
Tele/Fax: (619) 764-6999

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE TILE INDUSTRY HEALTH AND WELFARE FUND, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN TILE AND BRICK VENEER, INC., a California corporation, <br><br> Defendant. | CASE NO.: 2:18-cv-7449 <br><br> COMPLAINT FOR BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND RELATED TRUST AGREEMENTS; and VIOLATION OF SECTION 515 OF ERISA; |

Plaintiff **BOARD OF TRUSTEES OF THE TILE INDUSTRY HEALTH AND WELFARE FUND** complains and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this case under Section 502(e) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C § 1132(e), which grants the United States District Courts jurisdiction over civil actions brought by a fiduciary pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect

//

1  to the amount in controversy or the citizenship of the parties, as provided in Section

2  502(f) of ERISA, 29 U.S.C. § 1132(f).

3      2.     This Court also has jurisdiction over this case pursuant to Section

4  301(a) of the Labor Management Relations Act of 1947 ("LMRA"), as amended,

5  29 U.S.C. § 185(a), which grants the United States District Courts original

6  jurisdiction over suits for violation of contracts between an employer and a labor

7  organization in an industry affecting commerce, without respect to the amount in

8  controversy and the citizenship of the parties.

9      3.     The subject Trust Funds (defined *infra*) are administered by Boards of

10  Trustees in the City of West Covina, County of Los Angeles.  Venue is therefore

11  proper in this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §

12  1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), as it is the district

13  in which the subject employee benefit plan and associated plans are administered,

14  it is the district in which the relevant acts took place, and it is the district in which

15  monies are due and payable.

16      4.     To the extent this Complaint sets forth any state law claims, this Court

17  has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

18                              **PARTIES**

19      5.     Plaintiff **BOARD OF TRUSTEES OF THE TILE INDUSTRY**

20  **HEALTH AND WELFARE FUND** ("Plaintiff") is the governing body of the Tile

21  Industry Health and Welfare Fund; aka Tile Insurance Trust Fund.   The Tile

22  Industry Health and Welfare Fund; Tile Industry Retirement Savings Trust Fund;

23  Brick Layers and Trowel Trades International Pension Fund; Joint Apprenticeship

24  Trust Fund Tile Laying Industry; Tile and Marble Labor Management Trust;

25  International Masonry Institute; Southern California Tile, Marble & Terrazzo

26  Compliance Trust Fund; Tile Employers Contract Administration Fund (collectively

27  "Trust Funds") are jointly administered labor management trust funds which were

28  //

Complaint for Breach of Written Collective Bargaining Agreement, etc.          Case No.:2:18-cv-7449

1   created and maintained pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. §

2   186(c)(5).

3        6.    The Tile Industry Health and Welfare Fund is authorized by the

4   respective Boards of Trustees of the Trust Funds to receive and collect contributions

5   on behalf of the Trust Funds. The Trust Funds are multi-employer plans within the

6   meaning of Section 3(37)(A) and 515 of ERISA, 29 U.S.C. §§ 1002(37)(A) and

7   1145. Plaintiff is a fiduciary with respect to the Tile Industry Health and Welfare

8   Fund within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

9        7.    The Trust Funds were created pursuant to a Collective Bargaining

10   Agreement entitled the Tile Layer, Tile Finisher & Marble Finisher Agreement

11   ("CBA") between the Associated Tile Contractors of Southern California and the

12   Bricklayers and Allied Craftworkers Local No. 4, California. A true and correct

13   copy of the Tile Layer, Tile Finisher & Marble Finisher Agreement covering the

14   period of July 1, 2017 through May 31, 2020 is attached hereto and incorporated

15   herein by reference as Exhibits "A."

16        8.    The Trust Funds are each duly organized and operating in this State.

17        9.    The Trust Funds are now, and were at all times material to this action,

18   labor management multi-employer trusts created and maintained pursuant to Section

19   302(c) of the LMRA, 29 U.S.C. § 186(c).

20        10.    The Tile Industry Health and Welfare Fund provides employee benefits

21   pursuant to a multiemployer plan as defined in ERISA section 3(37)(A), 29 U.S.C.

22   § 1002(37)(A).

23        11.    Plaintiff is informed and believes, and alleges thereon, that Defendant

24   **AMERICAN TILE AND BRICK VENEER, INC.,** a California corporation

25   ("Defendant ATBV") is, and at all times relevant herein was, a corporation

26   organized and existing under the laws of the State of California with its principal

27   place of business in Los Angeles County, Signal Hill, California.

28   //

## FIRST CLAIM FOR RELIEF
### BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND RELATED TRUST AGREEMENT

12.     Plaintiff hereby incorporates by reference paragraphs 1 through 12 above to the same effect as if set forth verbatim here.

13.     Defendant ATBV became signatory to the CBA on January 12, 2015, when it executed a Memorandum Agreement for Individual Contractor on the form set forth in the CBA.  Therefore, at all times relevant herein, Defendant ATBV was bound by the terms and conditions of the CBA, which incorporates the terms of the Restated Agreement and Declaration of Trust Providing for the Tile Insurance Trust Fund ("Trust Agreement").

14.     Under the CBA, the Trust Agreement and the rules, regulations and procedures of the Tile Industry Health and Welfare Fund (collectively "Agreements"), Defendant ATBV is/was required to submit remittance reports and Trust Fund contributions to Plaintiff at the rates set forth in the Wage Benefit Addendum to the CBA.

15.     Particularly, Defendant ATBV agreed to prepare and submit true, complete and accurate written monthly contribution reports ("reports") to Plaintiff on a timely basis showing the identities of its employees performing work covered by the Agreements, and the number of hours worked by or paid to these employees.

16.     Defendant ATBV further agreed to submit contribution payments ("contributions") in the amounts required by the CBA to Plaintiff by the last day of the calendar month following the month in which the related hours were worked, and if not so submitted, Defendant ATBV is deemed delinquent and in violation of the Agreements.

17.     Defendant ATBV is also required to permit periodic audits by Plaintiff under the terms of the Agreements.

18.     Additionally, the Agreements provide that it is extremely difficult or impossible to ascertain the exact value of the monetary damage caused to Plaintiff

- 4 -

1   when a contributing employer, such as Defendant ATBV, fails to make timely

2   contribution payments. The Agreements provide that Plaintiff has requested and

3   received from the auditors of the Tile Industry Health and Welfare Fund, an analysis

4   that approximates the economic cost to Plaintiff associated with collecting

5   delinquent employer contributions, and forecast for such economic damage caused

6   to Plaintiff due to delinquent employer contributions. The auditors concluded that

7   the liquidated damages on the delinquent contributions at the rate of twelve percent

8   (12%) per annum, calculated thirty (30) days after the delinquency date, is the most

9   reasonable and accurate estimate.

10        19.    Also, under the Agreements, in the event of a delinquency, Defendant

11  ATBV is liable for interest at the rate of ten percent (10%) per annum from the

12  contribution due date until paid, and all other costs and expenses including but not

13  limited to attorney fees, audit fees and court costs incurred by Plaintiff.

14        20.    Plaintiff is informed and believes, and alleges thereon, that at relevant

15  times herein, Defendant ATBV performed work covered by the Agreements for

16  which it failed to pay contributions.

17        21.    Particularly, Plaintiff alleges that Defendant ATBV has performed

18  work in connection with a project known as Next on Lex Apartments, located at 275

19  West Lexington Drive, Glendale, California (the "Project"), and failed to pay

20  contributions on said work.

21        22.    In the alternative, Plaintiff alleges that Defendant ATBV improperly

22  subcontracted work on the Project, in violation of the CBA, Article V, Section 2,

23  and in violation of the Plaintiff's Trust Agreement, Article IV, Section 4.4, and

24  Defendant ATBV failed to pay contributions on the hours worked by employees of

25  its chosen subcontractor.

26        23.    In the alternative, Plaintiff alleges that Defendant ATBV improperly

27  worked as a double-breasted operation, and performed work on the Project under

28  the name of another, as a corporation, company, partnership, or any other business

Complaint for Breach of Written Collective Bargaining Agreement, etc.          Case No.:2:18-cv-7449

1   venture, and has failed to pay contributions on the hours worked by the employees
2   of this other business, in violation of the CBA, Article IV, Section 8, and Plaintiff's
3   Trust Agreement, Article IV, Section 4.5.

4        24.    By reason of the foregoing, Plaintiff is informed and believes that
5   Defendant ATBV has failed to pay contributions in an amount exceeding
6   $350,000.00, to be shown through proof at time of trial.

7        25.    Pursuant to the Agreements and Section 502(g)(2) of ERISA, 29
8   U.S.C. § 1132(g)(2), Defendant ATBV is obligated to pay to Plaintiff liquidated
9   damages for the detriment caused by its failure to pay the contributions and other
10  amounts owed to Plaintiff in a timely manner.  Therefore, Plaintiff is owed
11  liquidated damages in an amount to be established by proof at the time of trial.

12       26.    Pursuant to the Agreements and/or Section 502(g)(2) of ERISA, 29
13  U.S.C. § 1132(g)(2), Defendant ATBV owes Plaintiff interest on all unpaid
14  contributions and related amounts from the dates the sums were originally due to
15  Plaintiff.  Therefore, Plaintiff is owed interest in an amount to be established by
16  proof at the time of trial.

17       27.    It has been necessary for Plaintiff to engage legal counsel and incur
18  costs for the purpose of collection of contributions and other amounts.  Plaintiff is
19  entitled to reasonable attorneys' fees and costs in connection therewith pursuant to
20  the Agreements and 29 U.S.C. § 1132(g)(2).  The exact amount of legal fees and
21  costs due and payable, and any audit costs that may be incurred, have not been
22  ascertained at this time.  The amounts will be established by proof at the time of
23  trial.

24       28.    The Agreements do not require Plaintiff to exhaust administrative
25  remedies before initiating this action.

26  //
27  //
28  //

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF SECTION 515 OF ERISA**

29.     Plaintiff hereby incorporates by reference paragraphs 1 through 30 above to the same effect as if set forth verbatim here.

30.     Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

31.     Plaintiff is informed and believes, and alleges thereon, that at relevant times herein, Defendant ATBV performed work covered by the Agreements for which it failed to pay contributions.

32.     Particularly, Plaintiff alleges that Defendant ATBV has performed work in connection with a project known as Next on Lex Apartments, located at 275 West Lexington Drive, Glendale, California (the "Project"), and failed to pay contributions on said work.

33.     In the alternative, Plaintiff alleges that Defendant ATBV improperly subcontracted work on the Project, in violation of the CBA, Article V, Section 2, and in violation of the Plaintiff's Trust Agreement, Article IV, Section 4.4. Defendant ATBV failed to pay contributions on the hours worked by employees of its chosen subcontractor.

34.     In the alternative, Plaintiff alleges that Defendant ATBV improperly worked as a double-breasted operation, and performed work on the Project under the name of another, as a corporation, company, partnership, or any other business venture, and has failed to pay contributions on the hours worked by the employees of this other business, in violation of the CBA, Article IV, Section 8, and Plaintiff's Trust Agreement, Article IV, Section 4.5.

//

35.     By reason of the foregoing, Plaintiff is informed and believes that Defendant ATBV has failed to pay contributions in an amount exceeding $350,000.00 to be shown through proof at time of trial.

36.     Pursuant to the Agreements and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), Defendant ATBV is obligated to pay to Plaintiff liquidated damages for the detriment caused by its failure to pay the contributions and other amounts owed to Plaintiff in a timely manner.   Therefore, Plaintiff is owed liquidated damages in an amount to be established by proof at the time of trial.

37.     Pursuant to the Agreements and/or Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), Defendant ATBV owes Plaintiff interest on all unpaid contributions and related amounts from the dates the sums were originally due to Plaintiff.  Therefore, Plaintiff is owed interest in an amount to be established by proof at the time of trial.

38.     It has been necessary for Plaintiff to engage legal counsel and incur costs for the purpose of collection of contributions and other amounts.  Plaintiff is entitled to reasonable attorneys' fees and costs in connection therewith pursuant to the Agreements and 29 U.S.C. § 1132(g)(2).  The exact amount of legal fees and costs due and payable, and any audit costs that may be incurred, have not been ascertained at this time.  The amounts will be established by proof at the time of trial.

## PRAYER FOR RELIEF

**WHEREFORE**, on the First and Second Claim for Relief, Plaintiff prays for a judgment against Defendant ATBV as follows:

1.     For unpaid fringe benefit contributions of at least $350,000.00 in an amount to be shown through proof at trial;

2.     For damages incurred for breach of the collective bargaining agreement and related trust agreement in an amount to be shown through proof at trial;

3.     For pre judgment interest on all contributions due at the contractual

1     rate in an amount to be shown through proof at trial;

2         4.     For liquidated damages on all contributions due at the contractual rate

3     in an amount to be shown through proof at trial;

4         5.     For attorney's fees incurred herein in an amount to be shown through

5     proof at trial;

6         6.     For costs of lawsuit incurred herein in an amount to be shown through

7     proof at trial;

8         7.     For audit expenses in an amount to be shown through proof at trial;

9         8.     For such other and further relief as the Court may deem just and

10     proper.

11

12     DATED: August 24, 2018          KENNEDY LAW FIRM

13

14                             By:/S/ *JASON J. KENNEDY*

                                Jason J. Kennedy, Esq

15                                 Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Breach of Written Collective Bargaining Agreement, etc.         Case No.:2:18-cv-7449

# TILE LAYER, TILE FINISHER
# & MARBLE FINISHER
# AGREEMENT

### July 1, 2017 - May 31, 2020

This Agreement is entered into this first day of July 2017, by and between the Associated Tile Contractors of Southern California (hereinafter "ATC" or "Contractor") and Bricklayers and Allied Craftworkers Local No. 4, California (hereinafter "Union") and covers all work performed by members of the Tile Layer Craft and the Tile and Marble Finisher Crafts as provided in Article III. The former union signatory to the Tile Layer, Tile Finisher, and Marble Finisher Agreement, Tile, Marble and Terrazzo Local No. 18 of California of the International Union of Bricklayers and Allied Craftworkers, merged into Local No. 4 effective June 1, 2016. Local No. 4 is the successor to Local No. 18, including but not limited to for the purposes of this Agreement.

## ARTICLE I
## Recognition of Union and Multi-Employer Bargaining Unit

Following a demand by the Union for recognition as the Section 9(a) majority and exclusive collective bargaining representative, the ATC recognized the Union as the majority and exclusive collective bargaining representative under Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), for all employees of ATC members performing work covered by this Agreement, based upon a showing of evidence by the Union or an offer by the Union to show evidence that a majority of the bargaining unit employees have authorized the Union to represent them in collective bargaining. The ATC first extended Section 9(a) recognition to the Union on June 1, 1997, and reaffirmed that Section 9(a) recognition on June 1, 2004, on behalf of all individual contractors that were then ATC members.

The parties' intent, as expressed in the predecessors to this Agreement, has been to establish a multi-employer bargaining unit comprising all of the members of the ATC who were members of the ATC at the time the ATC first extended recognition to the Union as the Section 9(a) majority and exclusive collective bargaining representative for the employees of all ATC members performing work covered by this Agreement. The parties' intent has also been that any other individual Contractors that become bound to this Agreement, or that became bound to any of its predecessors after June 1, 2004, regardless of whether or not they are or become members

1

of the ATC, agree to recognize the Union as the Section 9(a) majority and exclusive collective bargaining representative for their employees performing work covered by this Agreement, and to become part of the multi-employer bargaining unit established by this Agreement, upon a demand for such recognition by the Union based upon a showing of evidence by the Union (or an offer by the Union to show evidence, if the individual Contractor declines to examine the evidence) that a majority of that individual Contractor's bargaining unit employees have authorized the Union to represent them in collective bargaining.

## ARTICLE II
### Territory Covered

**Section 1. Tile Layers.**   This Agreement covers the territory of the following counties for members of the Union performing Tile Layer work as defined in Article III, Section 3: Los Angeles, Orange, Ventura, San Bernardino, Riverside, San Diego, Imperial, Santa Barbara, San Luis Obispo, Inyo, Mono and Kern Counties in the State of California and the Channel Islands off Ventura and Santa Barbara counties.

**Section 2. Tile and Marble Finishers.**   This Agreement covers the territory of the following counties for members of the Union performing Finishers work as defined in Article III, Sections 4 & 5: Los Angeles, Orange, Ventura, Santa Barbara, San Luis Obispo, San Bernardino, Riverside, Kern, Inyo, Mono, San Diego and Imperial Counties in the State of California.

## ARTICLE III
### Work Covered

**Section 1.**   This Agreement pertains to the work hereinafter described, whether public or private work, anywhere within the above covered jurisdiction of the Union.

**Section 2.**   "TILE" is herein defined as, the following products:

(a) All burned clay products, as used in the Tile Industry, either glazed or unglazed.

(b) All composition materials, marble tile, stone tile, slate tile, granite tile, glass, mosaics and all substitute materials for tile made in tile like units.

2

EXHIBIT A

(c)  All mixtures in tile-like form of cement, metals, plastics and other materials, that are made for and intended for use as a finished floor surface, stair treads, promenade roofs, walks, walls, ceilings, swimming pools and all places where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes.

(d)  Natural or simulated stone slabs for bathtubs, showers and horizontal surfaces.

(e)  Thin tile that resembles full brick.

(f)  Thin porcelain tile panels such as "Laminam," "Techlam," Stonepeak," "Kerlite," or other materials manufactured as described in ANSI A137.3.

(g)  Any and all membranes, including but not limited to waterproofing membranes, crack isolation or "decoupling" membranes, and sound dampening membranes.

**Section 3.  Tile Layers Work.**  Tile Layers work is defined as:

(a)  The laying, cutting or setting of all tile where used for floors, walls, ceilings, walks, promenade roofs, exterior veneers, stair treads, stair risers, facings, hearths, fireplaces and decorative inserts, together with any marble plinths,  thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement brickwork, or other foundations or material that may be required to properly set and complete such work.

(b)  The application of a coat or coats of mortar, prepared to proper tolerance to receive tile on floors, walls or ceilings regardless of whether the mortar coat is wet or dry at the time the tile is applied to it.

(c)  The setting of all tile bonded with mortar, where the bed is floated, screeded, slabbed or buttered.

(d)  The setting of all tile by the adhesion method with organic and/or inorganic thin-bed bonding materials where such bonding material is applied to the backing surface and/or the back of tile units or sheets of tile.

(e)  The setting of tile as herein provided shall include the installation of accessories and the insertion of decorative tile inserts in other materials.

(f)  The setting, sealing and installation of prefabricated tile systems and/or panels.

3

EXHIBIT A

(g)  It is hereby agreed that the cutting of all materials by machinery or tools on the job site shall be performed primarily by the Tile Layer.  Finishers, however, shall be allowed to do that work when necessary, provided that the Union is so notified.

**Section 4. Tile Finishers Work.**   Tile Finishers shall mix all mortar by hand or machine, do all cleaning and grouting of all tile installed by the Tile Layer or similar worker, handle all sand, cement, lime, tile and any other materials and all chemicals that may be used by the Tile Layer or similar worker, after being delivered on the job.  Tile Finishers shall also install any and all membranes that may be required, including but not limited to waterproofing membranes, crack isolation or "decoupling" membranes, and sound dampening membranes.

**Section 5.  Marble Finishers Work.**  This Agreement pertains to the supplying of Finishers to BAC members for Marble Setters and/or similar workers while working on the erection or installation and setting of all classes of  Marble whether for interior or exterior purposes on any job in the territory above described in Article II, Section 2.

(a)  It shall be understood that the word Marble refers to Marble, Slate, or Stone Work, customarily set by the trade, both natural and artificial, in any public or private building covered by this Agreement, and in the territory governed by this Agreement.

(b)  It shall be understood also that Marble that is made for and intended for use as a finished floor surface, whether for interior or exterior floors, stair treads, promenade roofs, garden walks, interior walks, interior walls, ceilings, swimming pools, and all places where marble may be used to form a finished surface for practical use, sanitary finish or decorative purposes.

(c)  Marble Finishers shall perform all utility work including but not limited to, loading and unloading of trucks, distribution of all material (stone, sand, etc.) stocking of floors with material, all rigging for heavy work, the handling of all material that may be needed for the installation of such materials, building of scaffolding, polish, patching if needed, pointing up, caulking, grouting and cleaning of marble, use of tub saw or any other saw needed for preparation of material, drilling of holes, for wires that anchor material set by Marble Masons, mixing up of molding plaster, thinset, and mortar for the installation of material and such other work as may be required in helping a Marble Mason. This does not restrict the Marble Setter from assisting the Marble Finisher on completion of a job.

(d)  Bull-Gang Foreman's hourly wage rate shall be $1.50 per hour over the regular hourly rate of the Marble Finishers. Note:  Bull-Gang Foremen on all jobs determined by employer.

4

EXHIBIT A

13

## ARTICLE IV
## <u>Grievance and Arbitration Provisions</u>

**Section 1.**   In order to correctly interpret, enforce or arbitrate this Agreement, a Joint Arbitration Board shall be established for said purpose.  Said Joint Arbitration Board shall consist of four (4) members of the Contractors and four (4) members of the Union and each party may have one member present to act as an observer.  A Chairman and Secretary shall be elected from the Board who shall be rotated.  A paid recording secretary shall be employed for all meetings, and each organization shall jointly pay for same or as determined by the Joint Arbitration Board.

**Section 2.**   Should either Party deem that this Agreement is not proving satisfactory to their interest, each Party shall through the Arbitration Board, endeavor to correct or amend the Agreement to the satisfaction of the Parties.

**Section 3.**   If such endeavors fail within ninety (90) days after certified notification, it is agreed that all questions or differences arising between the parties hereto which cannot be settled by the Joint Arbitration Board shall be submitted to an Impartial Arbitrator.  If the parties cannot choose an Impartial Arbitrator, an Impartial Arbitrator shall be selected from a list provided by the Federal Mediation and Conciliation Service which shall be requested to submit a panel of seven (7) names.  Each party shall have the right to alternately strike a name from the submittal panel, and the remaining name shall be the Impartial Arbitrator.  Pending decision of the Arbitrator, the status quo at the time of the disagreement arose shall be maintained.

<u>Section 4.</u>

(a)  The arbitration procedures shall be applied to any disputes which may arise between the Parties regarding interpretation, application, enforcement or alleged violation of this Agreement.  In addition to any such disputes, the exclusive remedy for any employee who believes that he/she was not provided with a rest period, meal period, or heat illness recovery period as required by California law shall be the grievance and arbitration procedure of this Article IV; employees shall have no right to bring such claims in a court of law or before any administrative agency, including the California Labor Commissioner.

5

EXHIBIT A

(b)  Contractors who are members of the Tile Contractors Association of America, Inc. shall have the option of having their disputes resolved, after deadlock at the Joint Arbitration Board, by the National Officers or the Impartial Arbitrator as herein above set forth.  Pending settlement of any disputes by the Joint Arbitration Board, the National Officers, or the Impartial Arbitrator, the Parties agree that the status quo will be maintained pending resolution of the dispute.  The decisions of the Joint Arbitration Board, the National Officers or the Impartial Arbitrator shall be final and binding on the Parties.  If any dispute is submitted to the Impartial Arbitrator the costs of the same shall be borne equally between the Parties.

**Section 5.**  It is mutually agreed by each Party that they will meet at such times that are agreed upon in joint session to survey local conditions and begin negotiations for the purpose of formulating a new Agreement, pending the accomplishment of which, this Agreement shall remain in full force and effect up to the date of termination.

**Section 6.**  The Joint Arbitration Board shall have the authority, after due notice of hearing, to determine any and all violations of this Agreement, including the issue of arbitrability, and to assess damages for same.  All damages assessed shall be paid to the damaged party or other injured person.  A simple majority decision of the Joint Arbitration Board shall be final and binding.  In the event a Contractor fails to comply with any decision of the Joint Arbitration Board, the National Officers or the Impartial Arbitrator, the Union shall have the right to take economic action against said Contractor, including but not limited to removal of men from the job, strike, picket or any other lawful economic action, except for a violation of the subcontracting clause, where judicial enforcement of the award shall be the exclusive remedy.

**Section 7.**  In the event any work covered by this Agreement is performed in an unworkmanlike, unsatisfactory manner for reasons attributable solely to the employee's work and/or labor in the installation, setting, fabrication, and/or methods of affixing tile or other related products, the Contractor shall promptly notify the business Agent of the Union by phone and in writing.  It shall be the duty of the business Agent to promptly inspect and investigate the job in question.  It shall be the responsibility of the Union and the Contractor to jointly determine the competency of the employee and, if they so agree, they may reduce his/her wages to 85% until workmanship is upgraded.  The preceding sentence as applies to 85% shall not be applicable to Tile and Marble Finishers.  This Section shall not be applicable where the work has been performed by Apprentices with more than one year left on their apprenticeship, or where

6

EXHIBIT A

there is inadequate supervision and/or instructions.  The Union shall not be responsible for work done by its members.

### Section 8.

(a)  In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device of subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows:  If and when the Contractor shall perform any work of the type covered by this Agreement, at the site of a construction project, under its own name or under the name of another, as corporation, company, partnership, or any other business entity, including a joint venture, in violation of applicable federal law, then, the terms and conditions of this Agreement shall be applicable to all such work.

(b)  This Agreement shall be binding upon the Contractor, it successors, assigns, and any other entity managed or controlled by the Contractor which is created as a subterfuge to evade the terms and conditions of this Agreement.

(c)  Should the Union or the Contractor file suit to compel arbitration of a dispute under this Agreement, or to confirm any arbitration award, the prevailing party shall be entitled to recover all attorney's fees, accountant's fees as well as other out of pocket expenses incurred.

## ARTICLE V
### Contracting of Labor

**Section 1.**  Any Contractor who works with the tools must become a member of the Union.

**Section 2.**  Except as provided in subparagraphs (a) and (b) below, the Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

(a)  This Section shall not apply to demolition, clean up, trash hauling, sealing, lathing, scratching, backer board, scaffolding, waterproofing and caulking.

7

EXHIBIT A

(b)  Construction site fabrication within the jurisdiction of this Agreement (including but not limited to construction site fabrication of stone, exterior panels, subsurfaces to be tiled, etc.) shall not be subcontracted, sublet, assigned, or transferred except to signatory contractors, provided that such contractors are available, ready and capable of performing the work within the time and production schedule of the Contractor's customers.

(c)  All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

(d)  If, as a result of a violation of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subparagraph (c) of this Section, or to defend an action which seeks to vacate such award or which challenges the legality or enforceability of this Section, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of litigation, which have resulted from the bringing of such court action.

**Section 3.**  The Contractor shall not employ, nor shall any Tile Layer accept compensation, on a square foot or lump sum basis.

**Section 4.**  The Union shall not restrict its members to limit the amount of work they shall do in a given length of time but shall require of its members that work be completed in a workmanlike manner and in accordance with the Local Standards of the trade, as determined by the Joint Arbitration Board.

**Section 5.**  Any out of town Contractor coming into the jurisdiction of the Union who signs this Agreement shall be allowed to bring one (1) foreman or key man.  Additional workers shall be obtained pursuant to Article XIII.

**Section 6.**  An Accredited Representative of the Union shall have access to the job site during working hours for the purpose of performing his assigned duties.

**Section 7.**  At least once each month, each Contractor shall provide the Union with a report on the form attached hereto as Appendix A, which shall include the following information, for each new project under contract: 1) The name of the project; 2) The project location; and 3)

8

EXHIBIT A

The identity of the General Contractor and/or the Builder.  Any Contractor that fails to comply with this provision shall pay one-hundred dollars ($100) to the Apprenticeship Trust for each month of non-compliance.

## ARTICLE VI
### Conditions of Employment

Section 1.

(a)  It is agreed that all employees covered by this Agreement shall be, or become on the eighth day after employment or the eighth day after execution of this Agreement, whichever is later, and remain continuously, members in good standing of the Union as a condition of employment.  Membership in the Union shall be available on a non-discriminatory basis.

(b)  The Contractor shall discharge any employee pursuant to this Section upon written notice from the Union of such employee's non-payment of initiation fees or dues which are in a state of delinquency.  The Contractor agrees to furnish a copy of such notice to the employee forthwith.  The Union will hold the Contractor harmless for compliance with this Section.

(c)  Every Contractor signatory hereto shall make such payroll deductions as may be required and authorized by any employee covered under this Agreement so as to maintain membership in or become members of the Union.  All such above described payroll deductions shall be made payable and forwarded to the Union.

(d)  On jobs of five (5) or more crews, the Union shall have the authority to appoint a Steward.  The Steward shall be a journeyman appointed by the Union, who is a bona fide resident within the territory covered by this Agreement.

Section 2.

(a)  No employee working under the terms of this agreement shall be required to work on any premises at which there is a lawful primary picket line.  Should any employee refuse to work behind such a lawful primary picket line, such employee shall not be entitled to show up pay.

(b) No employee working under the terms of this agreement shall work under any conditions which are or may be detrimental to his/her health and/or which are in violation of State Safety Orders or other laws or ordinances.  Should an employee be prevented

9

EXHIBIT A

from working under this subsection, such employee shall be entitled to show up pay as set forth in this agreement.

(c) Should there be any dispute arising over the application of subparagraph (b), either party may refer the matter to the Joint Arbitration Board.  If the contractor refers the matter, the contractor shall deposit the requested show up time with the Joint Arbitration Board pending the Board's decision.

**Section 3.**  The Contractor shall not assign any work covered by this Agreement other than to workers covered under this Agreement, except as provided in Article V, Section 2.

**Section 4.**  The Union shall not restrict the Contractor in the use of power equipment or machine tools as long as such is covered work under this Agreement and is performed by employees covered by this Agreement, except as provided in Article V, Section 2.

**Section 5.**  Workers covered by this Agreement who may be required to perform work not in accordance with those standards set forth, by any General Contractor, Builder, Owner, Architect or Signatory Party to this Agreement and/or their respective Agent or Representative, shall not be held responsible for such work, provided said work is reported in writing to the Union within twenty-four (24) hours of its completion.

**Section 6.**  Following the execution of this Agreement, the ATC and the Union shall meet and confer in good faith to finalize a "Code of Conduct," based upon the "BAC Code of Conduct:  A Commitment to Quality, Dependability, and Value," which shall then be adopted and attached as an Addendum to this Agreement.

### ARTICLE VII
### Payment of Wages And Subsistence

**Section 1.**

(a)  The Contractor shall pay all employees covered by this Agreement by a negotiable check for services and expenses each week and shall pay in full up to within (5) days of their regular pay day and the payroll shall be distributed on the job not later than 4:00 p.m., Friday of the same week.  In cases where arrangements have been made to mail checks, then said checks shall be mailed by Special Delivery or in sufficient time that employees will receive same at their residence on Friday of the same week.  If a

10

### EXHIBIT A

worker is permanently laid off, wages are due and payable immediately at the time of layoff or discharge in compliance with the California State Labor Code.

(b)  The employee shall receive a check stub for each check showing the Contractor's name and address, the pay-period covered, regular and overtime hours worked, employee deductions to all Trust Funds and all deductions required by law.

(c)  It shall be the responsibility of the employee to complete and mail at the end of the work week a time card if this is the method used by the Contractor in payment of wages.

## Section 2.

THE FOLLOWING PROVISIONS SHALL BE IN EFFECT FROM JULY 1, 2017 TO 11:59 P.M., PACIFIC TIME, ON MAY 31, 2018, WHEN THEY SHALL EXPIRE AND BE REPLACED BY THE PROVISIONS SET FORTH BELOW:

(a)  The following amounts shall be paid to cover expense and subsistence with City Hall in Los Angeles being used as the measuring point.  These expenses shall be shown as such on the pay check stub.

(b)  The Contractor shall reimburse the employee for parking expenses incurred in congested areas where free parking is not provided or readily available to the job.

(c)  When jobs are beyond the 90 miles as measured by MapQuest, Contractors may choose between furnishing room and board (equivalent to Triple A (AAA) lodgings) or paying a subsistence allowance.  Where the Contractor elects to pay a subsistence allowance, the Contractor shall pay $80.00 per day for each day worked, and $80.00 per day for on jobs continuing over such Saturdays, Sundays and holidays, where the Contractor elects to have the employee remain overnight in the vicinity of the job site; the Contractor shall pay $25.00 per day for each day worked to each employee who commutes in his or her own vehicle between the employee's home and the job site, where the Contractor elects to have employees commute to the job site.

(d)  When jobs are located in remote or resort places where additional expense may be encountered, the Contractor shall furnish room and board or the expense allowance shall be increased to cover the additional expense.

(e)  When jobs are beyond 90 miles as measured by MapQuest, it is necessary to pay only one round-trip fare to each job or a section thereof.  Actual traveling time to the job is to be paid when the job starts, and return from the job when a worker has completed his services upon it or section thereof.  When common carrier transportation,

EXHIBIT A

"rail, boat, plane or bus," is furnished by the Contractor, then the worker shall be paid not to exceed eight (8) hours travel time at straight time out of each twenty-four (24) hours.

(f) The same rate of pay and travel pay shall apply, regardless of the means of transportation used by the employees.

(g) The driving distance for purposes of the payment of subsistence and expenses shall be determined by measuring from the location of the job to the measuring point within the county (or, in the case of Los Angeles county, the sub-county area) in which the employee in question resides. All such measurements shall be made utilizing "mapquest" or other similar internet mapping service. The measuring point for Los Angeles County, other than for employees who reside in the Antelope Valley, shall be Los Angeles City Hall. The measuring point for employees who reside in the Antelope Valley shall be the main post office in the City of Lancaster. The measuring point for Orange County shall be the City Hall in the City of Santa Ana. The measuring point for Ventura County shall be the City Hall in the City of Ventura. The measuring point for San Bernardino and Riverside Counties shall be the intersection of 3rd and Arrowhead Streets in San Bernardino. In all other counties, the county seat shall be used as the measuring point.

**THE FOLLOWING PROVISIONS SHALL TAKE EFFECT AT 11:59 P.M., PACIFIC TIME, ON MAY 31, 2018, AND REMAIN IN EFFECT THROUGH THE REMAINDER OF THIS AGREEMENT:**

(a) The following amounts shall be paid to cover expense and subsistence with the employee's primary residence being used as the measuring point. These expenses shall be shown as such on the pay check stub.

(b) The Contractor shall reimburse the employee for parking expenses incurred in congested areas where free parking is not provided or readily available to the job.

(c) When jobs are beyond 90 miles as measured by MapQuest, Contractors shall pay a subsistence allowance of $90.00 per day for each day worked and $90.00 per day for Saturdays, Sundays and holidays on jobs continuing over such Saturdays, Sundays and holidays.

(d) The driving distance for purposes of the payment of subsistence and expenses shall be determined by measuring from the location of the job to the location of the employee's primary residence. All such measurements shall be made utilizing "mapquest" or other similar internet mapping service.

12

EXHIBIT A

**Section 3.  Regular Work Schedule and Overtime.**  The regular work schedule shall be not more than forty (40) hours within a seven (7) day calendar week, which shall start on Monday and run through Sunday, and shall consist of five (5), eight-hour (8-hour) working days.  Overtime pay for the regular work schedule shall be paid as follows.  Daily overtime shall be paid at the rate of one-and-one-half (1 ½) times the rate of pay for any work in excess of eight (8) hours in any one (1) day, and at the rate of two (2) times the rate of pay for any work in excess of ten (10) hours in any one (1) day.  Weekly overtime shall be paid at the rate of one-and-one-half (1 ½) times the rate of pay for any work in excess of forty (40) hours in any one (1) calendar week, and at the rate of two (2) times the rate of pay for any work in excess of fifty (50) hours in any one (1) calendar week.  Where application of the daily and weekly overtime formulas would yield different amounts of pay, the higher amount shall be paid.

**Section 4.  Compressed Work Schedules.**  Compressed work schedules of four (4), ten-hour (10-hour) working days, or three (3), twelve-hour (12-hour) working days, shall be permitted as alternatives to the regular work schedule, upon written notice to the Union in advance of the Contractor's commencement of work on the project and in compliance with all legal requirements.  No overtime shall be permitted to be worked on compressed work schedules, i.e., hours beyond those set forth in the previous sentence.  Where a Contractor suffers or permits such overtime to be worked, the daily and weekly overtime rates for the regular work schedule set forth above in Section 3 of this Article shall apply.

**Section 5. Shift Pay.**

(a)  Regardless of whether an employee is working a regular work schedule or a compressed work schedule, if that employee commences work after 3:00 p.m., he or she shall be considered to be working a night shift and shall receive night shift pay therefor.

(b)  The night shift pay for an employee working a regular work schedule shall be the regular hourly rate of pay, plus an hourly shift premium of two dollars ($2.00), for the first eight (8) hours of work.  Daily overtime for night shift work performed on the regular work schedule shall be paid as set forth above in Section 3 of this Article, except that daily overtime at the rate of one-and-one-half (1 ½) times the hourly rate of pay (including the shift premium) shall be paid for any work in excess of eight (8) hours in any twenty-four hour (24-hour) period, and at the rate of two (2) times the hourly rate of pay (including the shift premium) for any work in excess of ten (10)

13

EXHIBIT A

hours in any twenty-four hour (24-hour) period. Weekly overtime for night shift work performed on the regular work schedule shall be paid as set forth above in Section 3 of this Article, except that weekly overtime at the rate of one-and-one-half (1 ½) times the hourly rate of pay (including the shift premium) shall be paid for any work in excess of forty (40) hours in any one (1) calendar week, and at the rate of two (2) times the hourly rate of pay (including the shift premium) for any work in excess of fifty (50) hours in any one (1) calendar week.

(c) The night shift pay for an employee working a compressed work schedule shall be the regular hourly rate of pay, plus an hourly shift premium of two dollars ($2.00), for the first ten (10) hours of work if the employee is working a schedule of four (4) days of ten (10) hours per day, or for the first twelve (12) hours of work if the employee is working a schedule of three (3) days of twelve (12) hours per day. No overtime shall be permitted to be worked on night shift compressed work schedules i.e., hours beyond those set forth in the previous sentence. Where a Contractor suffers or permits such overtime to be worked, the daily and weekly overtime rates for the regular night shift work schedule (set forth above in Section 5(b) of this Article) shall apply (including the shift premium).

**Section 6.**

(a) The following holidays are recognized as Legal Holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, Christmas Day. Any legal holiday falling on a Sunday the following Monday shall be observed as a holiday. All work performed on the actual date of any Holiday listed above shall be paid at the rate of double time.

(b) Contractor has the right to declare Friday preceding a Saturday legal holiday as a non-work day, but must give a week's notice. The employee may work the Saturday preceding or following as a regular work day.

(c) On any job where the General Contractor has an early starting time, the Union will grant permission as per schedule of General Contractor's Agreement if approved by the appropriate Building Trades Council.

**Section 7.** In the event of a work stoppage such as rain, or any other stoppage that is beyond the control of the Contractor, that does not allow the employee to work on a regular week day, it shall become the option of the employee to work on Saturday at the prevailing rate (straight time) as a make-up day. Generally, overtime pay shall not be owed for work

14

EXHIBIT A

performed on a Saturday unless and until the employee has worked eight (8) hours on that day or forty (40) hours over the course of the work week of which the Saturday is a part, whichever comes first.

**Section 8.**  Any workers ordered to report for work for whom no work is provided shall be paid four (4) hours pay, inclement weather conditions or failure for a full crew (when needed) to report for work excepted.  Workers reporting for work and claiming report pay under this Section shall first contact their employer and remain on the job until expiration of the four (4) hour period, unless instructed otherwise, by the employer or his representative.

(a)  Any employees ordered to report to work who are not so specified as incompetent, upon placement of the order by the Contractor, shall be paid four (4) hours' pay when declared incompetent upon their arrival at the job site, and said payment shall be sent with a letter of protest to the Joint Arbitration Board, WITHIN 72 HOURS, who will rule on the validity of the declaration of incompetence.

(b) The parties hereby adopt the "Model Substance Abuse Testing and Assistance Program" (hereinafter "Model Program") that is attached as an   Addendum to this Agreement, with the following additions and/or modifications:

(1)  Any employee who is removed from work and required to undergo reasonable cause testing under Section III (B) of the Model Program, and who subsequently tests positive, shall be deemed to have been suspended through the time that the employer is informed of the positive test result and shall have no right to be paid for that period of time.  If the test is negative, however, the employee shall be paid for that period of time.

(2)  Any employee who is terminated after a second positive test result shall not be eligible for subsequent referral through the Union's out-of-work registry unless and until the employee has successfully completed an approved employee assistance program under the Model Program and has passed a subsequent drug and alcohol test administered in compliance with the Model Program at the employee's expense.

**Section 9.**  To the fullest extent permitted by collective bargaining, this Agreement shall operate to waive the payment of any paid sick leave or paid time off benefit currently required under federal, state, or local law, including but not limited to California Labor Code sections 245-249.

15

EXHIBIT A

**Section 10.** The parties agree to waive the benefit of the County of Los Angeles Contractor Employee Jury Service Program, and the terms of this Agreement are intended to supersede all provisions of the Program.

## ARTICLE VIII
### Trust Funds

**Section 1.** All of the terms and conditions of the plans governing operation of the Tile Insurance Trust Fund which shall include the Tile Industry Health and Welfare Fund, the Tile Industry Retirement Savings Trust Fund, the Joint Apprenticeship Trust Fund, The Bricklayers and Trowel Trades International Pension Fund, the Tile and Marble Labor Management Cooperation Committee, Inc., the Southern California Tile, Marble & Terrazzo Compliance Trust Fund and the Tile Employers Contract Administration Fund, International Masonry Institute (collectively "Trust Funds") are hereby incorporated into this Agreement by reference and the contractors agree to be bound by all the terms and conditions contained therein.

**Section 2.** The Contractor hereby irrevocably designates as its representatives on the Board of Trustees as set forth immediately above, the Trustees who are now serving, or who in the future will serve, as Employer Trustees, together with their successors. The Contractor further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreements and Declarations.

**Section 3.** The Contractor agrees to make those contributions to the various Trust Funds as are set forth in the Wage and Fringe Benefit Addendum, which contributions shall not be considered as wages.

**Section 4.** In the event the parties enter into a Reciprocity Agreement permitting the payment of certain fringe benefit contributions to the home area of any employee temporarily working in this jurisdiction, payments shall be made in accordance with such Reciprocity Agreements that are agreed to by the Trustees of each Trust provided further, such Trust is qualified under the provisions of the applicable Internal Revenue regulations permitting the payments to be tax deductible by the Employer.

**Section 5.** Superintendents and estimators may be included in these plan (s) at a required per month hourly minimum established by the Trustees.

16

EXHIBIT A

**Section 6.** All contributions shall be paid on or before the thirtieth (30th) of the month following and if not so paid, the Contractor who has not paid such shall be considered delinquent and in violation of the Agreement.

**Section 7.** It is mutually agreed and understood that all employees covered by this Agreement shall be given the benefits of these plans as long as they are qualified for coverage under the Rules of Eligibility as shown in the various plans and are not working for a Contractor outside the territory covered by this Agreement or are not otherwise employed.

**Section 8.** If an Employer fails to make contributions to the Pension Fund within three (3) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Contractor shall be liable for all costs for collection of payment due together with attorneys' fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

**Section 9.** In order to properly enforce this Agreement, it is further mutually agreed and understood that all Contractors signatory to this Agreement shall keep true and accurate records of their payrolls and expenses paid to employees covered by this Agreement, and shall make them accessible for inspection or audit by the Trustees and any of the Trust Funds, or appointees, or disinterested representatives appointed by the Joint Arbitration Board. If an inspection or audit conducted under this section discloses that additional contributions are owed by a contractor in an amount which exceeds 5% of the contractor's Trust Fund contribution for the period covered by the inspection or audit, the contractor shall pay the costs of the inspection or audit.

(a) In the absence of complete and accurate records relating to any Employee compensation or reimbursement, the gross monies received by the Employee shall be presumed to be in payment of bargaining unit work as described in the Agreement and shall be divided by the basic hourly rate, not including fringe benefit contributions, to determine the hours worked by the employee and to compute the amount of Employer contributions required under this contract. Similarly, in the absence of complete and accurate records relative to all payments made to non-employees, including but not limited to subcontracted work and material purchases, such gross expenditures shall be

17

EXHIBIT A

presumed to be in payment of bargaining unit work and shall be divided by the basic hourly rate, not including fringe benefit contributions, to determine the hours lost by employees covered by this Agreement and to compute the amount of contributions contractually required by the Employer.

**Section 10.** All active Contractors may, if they so desire, procure health and welfare coverage by making self-contributions to the "Tile Contractors Insurance Trust Fund." Said contribution shall be made as the Trustees of the Tile Contractors Insurance Fund shall decide.

**ARTICLE IX**
**Bonding**

**Section 1.**
 (a) Bonding Procedure -- All Contractors signatory to this Agreement shall be required to post a surety bond with the TILE INSURANCE FUND in the amount of Seven Thousand, Five Hundred Dollars ($7,500.00), or, in an amount equal to one-twelfth (1/12) of the total Trust Fund contributions made by said Contractor to the funds during the preceding twelve (12) month period whichever is greater.
 (b) Any new Contractor shall be required to post a minimum bond of Seven Thousand, Five Hundred Dollars ($7,500.00). Such Contractor shall be subject to quarterly audits for the first two (2) years of operation.
 (c) Said bond shall be subject to assessment for payment due to the" Tile Industry Health and Welfare Fund", the "Tile Industry Retirement Savings Trust Fund", the "Joint Apprenticeship Trust Fund", the "Bricklayers and Trowel Trades International Pension Fund", the "Tile and Marble Labor Management Cooperation Committee, Inc.", the "Southern California Tile, Marble & Terrazzo Compliance Trust Fund", the "Tile Employers Contract Administration Fund", and the "International Masonry Institute" liquidated damages due any of the Trusts, prejudgment interest and for any other financial obligations of the Contractor under the collective bargaining agreement, including payment of wages.

**Section 2.** In the event that any Contractor signatory to this Agreement is determined by the Trustees of the TILE INSURANCE TRUST FUND to be delinquent in the payment of Trust Fund obligations, in an amount of ten percent (10%) of total monthly contributions owed by the Contractor, the JAB may, at its discretion, require the posting of an additional

18

**EXHIBIT A**

bond in an amount equal to the highest bond posted by a Contractor, pursuant to Section 1 of this Article during the preceding twelve (12) month period.

**Section 3.** In the event that any Contractor covered by this Agreement changes the legal entity of their business without notifying the Union and posting a new bond, the posted bond of the Contractor shall be liable for assessment for the delinquencies of the new legal entity for failure to make the contributions as specified in this Agreement.

**Section 4.** The bond of the Contractor shall be maintained in the full amount for the duration of this Agreement.

**Section 5.** The TILE INSURANCE TRUST FUND shall be empowered to hear and determine and levy on all bonds in the manner provided for in Article IV of this Agreement.

**Section 6.** A Contractor who files a late report (unless excused by the Board of Trustees of TILE INSURANCE TRUST FUND) will be responsible to pay interest on delinquent contributions at the rate of ten percent (10%) per annum from the delinquency date until payment is made in full. Liquidated damages of the greater of twelve percent (12%) per annum or $1000.00 will be assessed thirty (30) days after the delinquency date. Further, if a Contractor has two (2) assessments for liquidated damages within twelve (12) consecutive months, said Contractor shall, within seventy-two (72) hours after notice from the Trust Fund, post an additional One Thousand Dollars ($1,000.00) surety bond with the TILE INSURANCE TRUST FUNDS.

**Section 7.** Any Contractor signatory to this Agreement, who has not made contributions to the TILE INSURANCE TRUST FUNDS for twelve (12) months prior to becoming a signatory party to this Agreement, shall post a bond as required under Section 1.

**Section 8.** In the event that a signatory contractor is required to post a higher bond, as specified in Section 2, herein above, such requirements shall remain in effect for a period of twelve (12) months thereafter, provided that during that period, no further delinquencies occur.

19

EXHIBIT A

**Section 9.**  The bond of the Contractor shall be maintained in the full amount for the duration of this Agreement.  However, if in the preceding five (5) years, the Contractor has not become delinquent, the requirement to post a Performance Bond in accordance with this Article shall be waived for a period of twelve (12) months.  Such period of waiver shall continue from year to year thereafter so long as the Contractor does not become delinquent.

## ARTICLE X
### No Discrimination

The Contractors, jointly and individually, and the Union, do hereby agree that each of them shall not discriminate against any employee or applicant for employment because of race, color, sex, age, national origin, ancestry, political or religious opinions or affiliations, handicap or medical conditions as prohibited by the laws of the State of California and the United States government, as they now exist for the protection against discrimination or as those laws may be modified by judicial interpretation in the appellate courts or by amendments to current state and federal statute.

## ARTICLE XI
### Severability

Should any Article, Section or Addendum of this Agreement, or any portion thereof, be found to be invalid by reason of any existing or subsequently enacted legislation or by any Decree of a Court of competent jurisdiction, such Article, Section or Addendum of portion thereof shall be treated for all purposes as null and void.  The Union and the Contractors shall meet as soon as possible to negotiate a lawful substitute provision which all parties signatory hereto agree to be bound to.  The remaining portions of this Agreement shall continue in full force and effect notwithstanding the above.

## ARTICLE XII
### Most Favored Nation

**Section 1.**  Should the Union at any time during the existence of this Agreement enter into a contract granting more favorable conditions, wages or benefits to any Contractor, the Union agrees to make that contract available to all Contractors signatory to this Agreement.

20

EXHIBIT A

**Section 2.**  Section 1 shall not apply to the jobs of a newly organized Contractor that are in progress or that have been awarded in writing to the Contractor at the time that Contractor first becomes a signatory until those jobs are completed or six (6) months elapses from the date the Contractor first became a signatory.  In any event, the Contractor will be required to be in full compliance with all the terms and conditions of this Agreement, including wages and benefits on all covered work, not later than six (6) months from the date the Contractor first becomes signatory.

**Section 3.**  Section 1 shall not apply to the clauses determining the length of the contract or the method of dispute resolution contained in project agreements executed with the Building Trades Council and the Union.  In every other respect, all project agreements shall have the same wages, hours, benefits and working conditions as this Agreement and a copy of project agreement executed by the Building Trades Council and the Union will be sent to the President of the ATC.

## ARTICLE XIII
### Hiring and Dispatch

**Section 1.**  The Contractor shall have the right to hire employees to perform work under this Agreement from any source, and there shall be no exclusive hiring hall, except with regard to the dispatch of apprentices, as specified below in this Article.  The Union shall maintain an "out-of-work" registry, with separate lists for each classification of employees under this Agreement, upon which unemployed Union members may register for work.  The Contractor shall not be required to request the dispatch of journeymen from said registry, but may do so voluntarily in its sole discretion.  If the Contractor requests the dispatch of journeymen from the Union, the Contractor shall not be required to hire in order of the journeymen's names on the list.  The Contractor shall report all journeymen hired to the Union by the end of the next business day, and shall require all journeymen hired to register with the Union within seven (7) days after the date of hire.  The Union shall issue a written referral slip to the Contractor after the journeyman registers with the Union. The Contractor may discharge any worker for any cause that the Contractor may deem sufficient provided there shall be no discrimination on the part of the Contractor in hiring, discharge, or any other terms and conditions of employment against any worker for Union activity or on any basis prohibited by federal, state, or local law.

21

EXHIBIT A

**Section 2.**  In the employment of workers for all work covered by this Agreement, the following provisions shall govern:

(a)  Only qualified workers shall be permitted to work under this Agreement. A qualified Tile Layer shall be defined as a person who has completed a four (4) year apprenticeship or equivalent program in the setting of ceramic tiles; and/or who has passed a journeyman trade or equivalent test.  A qualified Finisher shall be defined as a person who has completed a two (2) year apprenticeship or equivalent program of finishers work experience and/or who has passed a journeyman trade or equivalent test. The provisions of this Section 2, paragraph (a) shall not be applicable to apprentices.

(b)  The Union shall establish and maintain an "out-of-work" registry for journeymen, which may be limited to Union members, with separate lists for each classification of employees under this Agreement, upon which unemployed Union members may register for work.  No Contractor shall be obligated to request the dispatch of journeymen from that registry, however, but may do so at their sole discretion.

(c)  Tile Layer Journeyman who have not previously worked under the terms of this Agreement when dispatched, shall be dispatched as journeyman.  If the Contractor objects within ten (10) working days that said employee is not a qualified journeyman, said employee shall become an Improver Apprentice, who shall receive 85% of the journeyman wage rate plus the benefits specified in this Agreement, until such time as the employee may be evaluated and/or reclassified by the JAC.

(d)  Any worker may be re-evaluated on request if his or her production and quality is not consistent with current classification.

(e)  All tile Contractors must have a letter on file in the Union office listing the names of all persons, other than themselves, who have authorization to act in the capacity of employing and terminating workers.

**Section 3.**  Tile Layer and Finisher Apprentices.  Apprentices shall be dispatched and referred as follows:

(a)  Apprentices who are unemployed shall be registered on the Union's Apprentice Available For Work List.  Apprentices shall be registered on the applicable out of work list in the order of time and date of registration.

(b)  The Contractor shall call the Union office when in need of apprentices. The Union shall immediately dispatch to the Contractor the number of apprentices needed and requested by the Contractor by use of a written dispatch slip stating information pertinent to the prospective employment.  The selection of apprentices for

22

EXHIBIT A

dispatch to jobs shall be on a non-discriminatory basis.  Apprentices shall be referred on a first-in, first-out basis; that is the first apprentice registered shall be the first apprentice referred. Notwithstanding anything to the contrary in this Agreement, or in any other agreement between the parties hereto, there shall be an exception to the "first-in, first-out" basis for referrals to accommodate bona fide local resident hiring requirements and lawful affirmative action hiring requirements, imposed on contractors signatory or otherwise bound to this Agreement, mandated by governmental entities on building and construction projects, provided that the Union is notified in writing of the terms of the hiring requirements upon the award of the contract for the project. In such instances, the exceptions to the "first-in, first-out" basis for referrals shall be only as broad as is necessary to accommodate the hiring ratios specified by the governmental entity, e.g., if the governmental entity requires that 25 percent of the workers hired for the project be local residents, the "first-in, first-out" basis for referrals shall still apply to the other 75 percent.

(c)  Any apprentice having any disagreement with his or her placement or dispatch shall be entitled and required to exhaust internal remedies, available in this Agreement, which are expressly made available to such apprentice, prior to, and as a condition of seeking other relief of any type of nature, whether administrative or judicial.

(d)  Upon the termination of employment between a Contractor and an apprentice, the Contractor, upon request by the Union, shall, within five (5) working days, notify the Union in writing of the reason (s) for such termination.

(e)  Contractors shall have the right to recall apprentices by name from the Apprentice Available for Work List provided that, the apprentice was, within the previous ninety (90) calendar days, employed by said Contractor.  Additionally, if an out of work apprentice has worked for a Contractor within the previous thirty (30) calendar days, such Contractor may request, by name, to have such apprentice re-dispatched by the Union for re-employment even if said apprentice has already been dispatched to another Contractor, provided that such requesting Contractor has sent a letter to the Union requesting to put a hold on such requested apprentice for a thirty (30) calendar day period after termination of employment.

(f)  An Apprentice may refuse initial dispatch if the job site to which the apprentice is being dispatched to is more than 45 miles, as the crow flies, from the apprentice's residence.  There will be no penalty for such refusal.

23

EXHIBIT A

**Section 4.**  The Employer shall have the right to declare the competency of the employee and hire or not hire accordingly.  The employer retains the right to reject any applicant for such reasons as intoxication, lack of sufficient tools, lack of adequate transportation, failure to communicate as necessary to perform the job safely and efficiently, and failure to provide proof of eligibility to work in accordance with the Immigration Reform and Control Act.

**Section 5.**  Any applicant who is denied employment by reason of the application of this Article shall have the right to appeal to the Joint Arbitration Board as set forth in this Agreement, which Board shall have the authority to review and consider all of the issues presented through such appeal.  The decision of the Joint Arbitration Board shall be final and binding on all issues presented in connection with appeals under this Article.

## ARTICLE XIV
## Equipment

### Section 1.  Tile Layers. Tile Finishers & Marble Finishers

(a) It shall not be a condition of employment for any Tile Layer, Tile Finisher or Marble Finisher to furnish any type of vehicle or carrier for his employer's use.  If any Tile Layer, Tile Finisher or Marble Finisher agrees to furnish his vehicle for hauling his employer's material, the owner of said truck will not be required to haul more than what one Tile Layer, Tile Finisher or Marble Finisher can install in one day.  Reimbursements for use of truck shall be set at $15.00 per day.

(b) The Contractor shall furnish the following equipment on the job:  mortar box, specialty equipment, wheelbarrows, and power tools (as needed).  Such equipment shall be maintained in good order.  Suitable cheese-cloth and/or sponges shall be supplied by the Contractor.

(c) Tile Layers, Tile Finishers and Marble Finishers shall supply all hand tools as required for the successful completion of their work along with the following personal protection equipment: appropriate work boots, safety glasses, knee pads, appropriate gloves, hard hat, safety vest.  Fall arrest protection, respirators, dust masks, and hearing protection shall be considered specialty equipment.

(d) Tile Finishers shall supply three (3) five gallon buckets and two (2) three gallon buckets.

24

EXHIBIT A

## ARTICLE XV
### Apprentices

**Section 1.** In order to maintain and ensure an adequate number of qualified Tile Layers and Tile or Marble Finishers for employment in the industry, the parties have agreed to set up, organize and maintain, consistent with the provisions of the Apprentice Labor Standards Act of the State of California, a training program for apprentices and other persons employed or employable under this Agreement, and for this purpose shall institute a Joint Apprenticeship Trust Fund (hereinafter Joint Apprenticeship Committee or "JAC") for Tile Layers, Tile Finishers and Marble Finisher Apprentices. An apprenticeship training committee shall be set up which will be governed by the terms of this Article, except as otherwise stated.

**Section 2.**
(a) The Committee shall consist of eight (8) members: four (4) of whom shall be Associated Tile Contractors of Southern California contractors or their representative and four (4) of whom shall be journeyman members of the Union. Two alternates shall be appointed to each Committee, one by the ATC and one by the Union. In addition, there shall be one advisor from the Local School District, and one apprenticeship consultant representing the State Division of Apprenticeship Standards or the Bureau of Apprenticeship and Training, U.S. Dept. of Labor on the Committee and such other advisors as the Committee shall determine.

(b) The Committee shall be responsible for the administration and supervision of the Standards which among other things, includes a progressive schedule of wages; on-the-job training, periodic examination, ratio, classroom instruction and adjustment of complaints.

(c) The Committee may seek assistance from other parties signatory to this Agreement, or any other agency interested in furtherance of apprenticeship training.

**Section 3.** The Contractor shall use its best efforts to keep apprentice(s) employed and will not dispense with the apprentice (s) services for reasons other than lack of work until the Contractor presents his case before the applicable Committee at a meeting arranged for this purpose.

25

EXHIBIT A

**Section 4.** It is agreed that every active Contractor working under the terms of this Agreement, shall pay the applicable apprentice Trust Fund the required cents per hour for each hour worked by all workmen covered by this Agreement as provided in the attached Wage and Benefit Addendum.

**Section 5.** Apprentices shall be paid not more than nor less than the appropriate wage for such apprentice's classification as set forth in the Wage and Benefit Addendum. Should the J.A.C. Board of Trustees find any party who pays or receives hourly amounts, in any form that exceed or are less than those amounts assigned and stipulated for a given apprenticeship period to any apprentice as set forth in Section 5 of this Article, such party shall be assessed damages of two (2) times the amount paid or received or such amounts that may be assessed. After a proper notice and date hearing, as set by the J.A.C. Board of Trustees, the party or parties found to be in violation of Section 5 or any part thereof shall make any assessed amounts payable to the J.A.C. by certified check. The J.A.C. Board of Trustees shall further have the authority to alter or change this subsection in its application as they deem necessary.

(a) A JOURNEYMAN FINISHER enters the Tile Layer Apprenticeship Program at the 3rd period (S-3), with a pay rate equal to that held as a finisher and remains at that rate until he/she reaches parity with the apprentices at the current rate.

**Section 6.** All apprentices shall enter into a written agreement with the applicable Committee which agreement shall be registered with the State of California, Division of Apprenticeship Standards. All new apprentices shall serve a probationary period of one thousand (1000) hours of work in the trade, pursuant to the terms of this Agreement. Failure on the part of an apprentice to satisfactorily complete the apprentice's obligations during such probationary period shall result in automatic cancellation of such application and agreement.

**Section 7.**

(a) The J.A.C. shall in cooperation with the Local Board of Education determine the establishment and scheduling or related and supplemental instruction classes.

(b) The parties to this Agreement agree that all apprentices shall attend supplemental related classes, as assigned by each Committee.

(c) The Committee shall have the authority to exercise disciplinary action of lay-off from the job for failure to meet minimum requirements in accordance with the terms of the applicable Apprenticeship Standards and addendum thereto.

26

EXHIBIT A

(d) Apprentices shall be allowed sufficient time off from employment in order to attend related and supplemental training classes.

(e) No apprentice shall be permitted to act as a foreman without approval of the J.A.C. No apprentice with less than one (1) year experience at the trade shall perform any job without proper supervision.

**Section 8.** Any violation of the applicable Apprenticeship Standards by either the Contractor or apprentice shall constitute a violation of this Agreement.

**Section 9.** A qualified Contractor may employ one Apprentice when he has at least one Journeyman regularly employed, and one additional Apprentice for each additional Journeyman. The reference to Journeyman shall be those employees who have completed training under these Standards and/or those employees as set forth under the terms and conditions of the current Collective Bargaining Agreement in its entirety which are part of these Standards.

**Section 10.** All 8th period Tile Layer Apprentices will be evaluated by the Joint Apprenticeship Committee as to their qualifications (for both quality of work and productivity) prior to being advanced to Journeyman status through a written and "hands-on" test established and administered by the Joint Apprenticeship Committee. Failure of the apprentice to satisfactorily complete this evaluation and testing procedure will continue their status as an apprentice until such evaluation and test is completed in a satisfactory manner.

## ARTICLE XVI
### Contract Administration Fund

Each Employer who is a member of the Association, and individual employer signatory to this Agreement, or an individual employer signatory to a letter of assent to be bound by this Agreement shall pay the Contract Administration Fund the amount indicated in the Wage & Benefit Addendum for each hour worked by each of its employees upon work covered by this Agreement, or for which such employees are entitled to be paid, whether worked or not; provided that payments to the Contract Administration Fund made pursuant to this Article shall be used to cover costs of negotiating and administering the Agreement; and provided further that no contractor shall be required under this agreement to pay the Contract Administration Fund for any hour(s) worked by its employee(s) upon work covered by this Agreement (of for which its employee(s) otherwise is/are entitled to be paid) over 100,000

27

hours per year for each year of this agreement (the year being the period June 1 thru May 31). The Association may unilaterally increase, decrease or eliminate contributions to the Contract Administration Fund upon notice to the Union and the Trust Fund Administrator.

## ARTICLE XVII
### Wage Rate

**Section 1. Tile and Marble Finishers.** Tile and Marble Finishers hourly wage rates shall be set forth in the Wage and Benefit Addendum attached hereto.

(a) Tile and Marble Finishers may be required at the discretion of the Employer to report to the Employer's establishment for work assignment.

**Section 2. Tile Layers.** The Tile Layers hourly wage rate shall be as set forth in the Wage and Benefit Addendum attached hereto.

(a) Each foreman shall be a journeyman tile layer and shall be responsible for the installation of work under his supervision as to quality of workmanship. Whenever between ten (10) and nineteen (19), inclusive, Tile Layers and/or Finishers are employed on any one (1) job, one shall be selected by the employer as foreman, and shall receive an additional $15.00 per day. Whenever twenty (20) or more Tile Layers and/or Finishers are employed on any one (1) job, one shall be selected by the employer as foreman, and shall receive an additional $20.00 per day. Any one tract of homes shall be defined as a single job.

(b) Any employee covered by this Agreement determined to be incompetent by three Contractors and the Joint Arbitration Board in a period of one year shall be referred to the Joint Arbitration Board for such action as may be deemed appropriate by the Joint Arbitration Board which may include termination of industry employment if the Board determines after a hearing that the employee is unable or unwilling to provide a good day's work for a good day's pay.

## ARTICLE XVIII
### Amendments to Agreement

It is hereby agreed by and between the parties signatory to this Agreement that any amendments, changes or modifications of this Agreement by the Joint Arbitration Board shall be binding on all signatory parties to this Agreement.

28

EXHIBIT A

## ARTICLE XIX
### Terms and Termination

**Section 1.**  The term of this Agreement shall be from July 1, 2014 through May 31, 2020.  Upon its termination date, this Agreement shall automatically extend and continue in effect from year to year thereafter, from June 1 through May 31 of each year, unless timely notice is given as specified in this Section.  Such notice can be provided either by the Union, by the ATC, or by an individual Contractor.  Either the Union or the ATC can provide notice by sending written notice to the other of its intent to renegotiate this Agreement, not less than sixty (60) days nor more than ninety (90) days prior to the termination date or, if the Agreement has automatically extended, any anniversary thereof.  Any individual Contractor bound to this Agreement (regardless of whether or not it is a member of the ATC) can provide notice on its own behalf by sending written notice to both the Union and the ATC that it wishes to renegotiate this Agreement (or to terminate this Agreement without negotiating a successor agreement, if it has the right to do so), that it does not wish to be represented in collective bargaining negotiations by the ATC, and that it wishes to represent itself in negotiations for a successor Agreement (unless it intends to terminate the Agreement, if it has a right to do so).  To be timely, such notice by an individual Contractor must be sent not less than sixty (60) days nor more than ninety (90) days prior to the termination date of this Agreement or, if this Agreement has automatically extended, any anniversary thereof.  If neither the Union nor the ATC provides timely notice under this provision, this Agreement shall automatically extend pursuant to this Section as to the ATC and each individual Contractor that has not timely provided its own notice under this Section, and each such individual Contractor that has not timely provided its own notice shall be fully bound to that extended Agreement, regardless of whether or not it is a member of the ATC.

**Section 2.**  If either the Union or the ATC sends notice to the other in the manner specified in Section 1 of this Article, above, each individual Contractor (regardless of whether or not it is a member of the ATC) shall be fully bound to any successor agreement negotiated between the Union and the ATC (and/or to any modifications, changes, amendments, supplements, extensions or renewals to this Agreement negotiated between the Union and the ATC), unless, not less than sixty (60) days nor more than ninety (90) days prior to the termination date, it sends written notice to both the ATC and the Union that it does not wish to be represented in collective bargaining negotiations by the ATC, and that it wishes to represent itself in negotiations for a successor Agreement (or that it wishes to terminate this Agreement without negotiating a successor agreement, if it has the right to do so).

29

EXHIBIT A

**Section 3.** This Article shall be strictly construed and enforced in favor of fully binding all individual Contractors (regardless of whether or not they are ATC members) to any successor agreement negotiated between the Union and the ATC, to any modifications, changes, amendments, supplements, extensions or renewals to this Agreement negotiated between the Union and the ATC, and/or to any automatic extensions of this Agreement occurring under Section 1 of this Article. To that end, notice by individual Contractors to the ATC shall not be deemed to constitute notice to the Union, notice by individual Contractors to the Union shall not be deemed to constitute notice to the ATC, and the requirements set forth in this Article regarding the content of the notice shall be strictly construed and applied.

IN WITNESS THEREOF, we the undersigned have set our hands and attached the official seals of our respective organizations this _27th_ day of _June_ , _2017_ .

Associated Tile Contractors
of Southern California

George Ballantyne

International Union of Bricklayers
and Allied Craftworkers
Local No. 4, California

Chad Boggio

## WAGE AND BENEFIT ADDENDUM AGREEMENT

1. "H&W"; "LOCAL PEN"; "IPF PEN"; "APPR"; "L/M"; "IMI" "COMP"; "CAF"; respectively mean the Tile Industry Health & Welfare Trust Fund; Tile Industry Retirement Savings Trust Fund; Brick Layers and Trowel Trades International Pension Fund; Joint Apprenticeship Trust Fund; Tile and Marble Labor Management Trust; International Masonry Institute; Southern California Tile, Marble & Terrazzo Compliance Trust Fund; Tile Employers Contract Administration Fund. Contributions to each will be in accordance with the amounts set forth in this Wage and Benefit Addendum.

2. "Improver B" and/or "Red Circle Marble Finisher" as used in this Wage and Benefit Addendum shall be defined to mean all workmen who were classified as a Journeyman Finisher prior to May 31, 1994. All newly hired Tile Finishers entering the trade after June 1, 1994 will start at, and progress in accordance with, the progression system and wage rates set forth in this Wage and Benefit Addendum (e.g., skill Levels F-1 through Journeyman Layer). Workers with the Improver B classification who wish to become Journey Layers through the apprentice program will be classified Apprentice Layers at skill level S-3 for all purposes including the payment of benefits but will continue to earn the Improver B or Red-Circle rate that was in effect on the date they entered the apprenticeship program, until they reach a period of apprenticeship having a higher rate of pay, at which time they will earn the higher rate.

3. All Journeyman Marble Finishers that have 10,000 Marble hours reported to the TITF are eligible to take a test that will be developed and administered at the end of each school semester, by the JAC. Upon satisfactorily passing the test they will re-classified as Red-Circle Marble Finishers.

4. All Tile Finishers who have 10,000 tile finisher hours reported to the TITF are eligible to take a test that will be developed and administered by the JAC. Upon satisfactorily passing that test, they shall be reclassified as "Improver B" and earn wages and benefits commensurate with that classification.

5. By no later than July 30, 2017, the Union agrees to submit whatever documentation is necessary to cause the Department of Labor, Director of Industrial Research and any other applicable State and Federal agencies to change the wage and benefit specifications applicable to government and/or prevailing wage jobs to reflect the wage and benefits set forth in this Wage and Benefit Addendum. Copies of all written correspondence and documentation provided by the Union to such agencies to comply with this paragraph will be sent simultaneously to the President of the ATC.

EXHIBIT A

## Bricklayers Allied Craftworkers Local # 4
### Tile Layer, Tile Finisher Marble Finisher
### Wage Benefit Addendum
### July 1, 2017 through May 31, 2020

| CLASS | Skill Level | WAGE | H&W | LOCAL PEN | IPF PEN | IPF PPA | APPR | LM | IMI | COMP | CAF | TOTAL | Less Dues | Report As |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| App Fin | F1 | $15.33 | $4.24 | $ - | $ - | | | $ - | $ 0.37 | $ - | $ 0.05 | $20.42 | $0.86 | B-24/44 |
| App Fin | F2 | $18.71 | $6.38 | $ - | $ - | | | $ - | $ 0.37 | $ - | $ 0.05 | $25.94 | $0.86 | B-23/43 |
| App Fin | F3 | $22.08 | $7.58 | $2.00 | $ - | | | $ - | $ 0.37 | $ - | $ 0.05 | $32.51 | $0.86 | B-22/42 |
| App Fin | F4 | $24.94 | $7.58 | $2.00 | $ - | | | $ - | $ 0.37 | $ - | $ 0.05 | $35.37 | $0.86 | B-21/41 |
| Journey Finisher | F5 | $25.98 | $8.43 | $2.00 | $ - | | $0.43 | $ 0.06 | $ 0.37 | $ 0.17 | $ 0.05 | $37.49 | $1.12 | B-20/40 |
| App Layer | S1 | $16.99 | $9.25 | $ - | $ - | | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $27.59 | $1.23 | A-12 |
| App Layer | S2 | $19.26 | $9.25 | $ - | $ - | | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $29.86 | $1.23 | A-12 |
| App Layer | S3 | $21.90 | $9.25 | $4.28 | $1.30 | $0.56 | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $38.64 | $1.23 | A-11 |
| App Layer | S4 | $24.17 | $9.25 | $4.28 | $1.30 | $0.56 | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $40.91 | $1.23 | A-11 |
| App Layer | S5 | $26.43 | $9.25 | $4.28 | $1.30 | $0.56 | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $43.17 | $1.23 | A-11 |
| App Layer | S6 | $28.70 | $9.25 | $4.28 | $1.30 | $0.56 | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $45.44 | $1.23 | A-11 |
| App Layer | S7 | $33.23 | $9.25 | $4.28 | $1.30 | $0.56 | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $49.97 | $1.23 | A-11 |
| App Layer | S8 | $35.49 | $9.25 | $4.28 | $1.30 | $0.56 | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $52.23 | $1.23 | A-11 |
| Journey Layer | S9 | $37.76 | $9.25 | $4.28 | $1.30 | $0.56 | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $54.50 | $1.64 | A-10 |
| Improver B | I2 | $28.84 | $8.43 | $2.60 | $ - | | $0.43 | $ 0.06 | $ 0.41 | $ 0.19 | $ 0.05 | $41.01 | $1.23 | B-10 |
| Improver A | I1 | $32.10 | $9.25 | $4.28 | $1.30 | $0.56 | $0.43 | $ 0.06 | $ 0.55 | $ 0.26 | $ 0.05 | $48.84 | $1.64 | A-10 |
| Red Cir Marble Fn | | $30.93 | $9.25 | $2.83 | $ - | | $0.43 | $ 0.06 | $ 0.44 | $ 0.22 | $ 0.05 | $44.21 | $1.32 | B-30 |

Effective 6/1/2018 The following increases will be allocated by labor: Tile Layers $2.15, Finishers $1.85, Red Cir Marble Finishers $1.85,  Improver B  $1.85

Effective 6/1/2019 The following increases will be allocated by labor: Tile Layers $2.15, Finishers $1.85, Red Cir Marble Finishers $1.85,  Improver B  $1.85

Tile Layers, Tile and Marble Finishers: L.A., Orange, Ventura, San Bernardino, Riverside, Kern, Inyo, Mono, San Diego, Santa Barbara, San Luis Obispo and Imperial Counties

32

## MEMORANDUM AGREEMENT FOR INDIVIDUAL CONTRACTOR

IT IS HEREBY AGREED between the undersigned individual Contractor and Tile, Marble and Terrazzo Local No. 4 California of the International Union of Bricklayers and Allied Craftworkers ("Union"), in consideration of services performed and to be performed by tile employees for the Contractor, as follows:

1.      The individual Contractor agrees to become fully bound to, and to comply fully with all of the terms (including but not limited to wages, hours, and working conditions) set forth in, the "Tile Layer, Tile Finisher & Marble Finisher Agreement" between the Union and the Associated Tile Contractors of Southern California ("ATC"), effective July 1, 2014 through May 31, 2020, as well as any future modifications, changes, amendments, supplements, extensions and/or renewals thereof that may be negotiated between the parties thereto, and to the interpretation and enforcement thereof.

2.      The term "CBA" as used in this Memorandum Agreement shall be understood to refer to the existing "Tile Layer, Tile Finisher & Marble Finisher Agreement" between the Union and the ATC, effective July 1, 2014 through May 31, 2020, as well as any subsequent modifications, changes, amendments, supplements, extensions or renewals of or to said designated CBA. The CBA is incorporated herein by reference. The individual Contractor hereby expressly acknowledges that a copy of the CBA has been delivered to, and received by, it.

4.      The individual Contractor agrees that it does irrevocably designate and appoint the employer members of all Trust Funds and Plans mentioned in the CBA as its attorneys in fact for the selection, removal and substitution of Trustees or Board members as provided in the Trust Agreements or Plans as may be hereinafter provided by or pursuant to said Trust Agreements or Plans.

5.      The individual Contractor specifically waives any right that it may have to terminate, abrogate, repudiate or cancel this Memorandum Agreement during its term or during the term of any future modifications, changes, amendments, supplements, extensions or renewals of or to the CBA, or to file any petition before the National Labor Relations Board seeking to accomplish such termination, abrogation, repudiation or cancellation, or to file any petition before the National Labor Relations Board seeking clarification or redefinition of the bargaining unit covered by this Memorandum Agreement or by the CBA.

33

**EXHIBIT A**

6.     This Memorandum Agreement shall remain in full force and effect for the period of the term of the existing CBA and for the terms of any successor agreements thereto, or any renewal or extension thereof, negotiated between the Union and the ATC, and any automatic extensions of the CBA.  To that end, the individual Contractor hereby authorizes the ATC to represent it in collective bargaining throughout the term of the existing CBA and of any successor agreements thereto, and in negotiations for any successor agreements thereto or any renewals or extensions thereof.  The sole exceptions to this provision shall be as follows. (1) The Union can send written notice to the individual Contractor of its intent to change or cancel this Memorandum Agreement at least sixty (60), but not earlier than ninety (90) days prior to the termination date of the CBA or any successor agreement thereto or renewals or extensions thereof. (2) The individual Contractor can give written notice to both the Union and the ATC that it wishes to renegotiate the CBA (or to terminate the CBA without negotiating a successor agreement, if it has the right to do so), that it does not wish to be represented in collective bargaining negotiations by the ATC, and that it wishes to represent itself in negotiations for a successor CBA (unless it intends to terminate the CBA, if it has a right to do so).  To be timely, such notice by an individual Contractor must be sent not less than sixty (60) days nor more than ninety (90) days prior to the termination date of the CBA, or any successor agreements thereto or renewals or extensions thereof, or, if the CBA has automatically extended, any anniversary of its termination date.  For the purpose of providing notice of intent to renegotiate the CBA, or of any successor agreements thereto or renewals or extensions thereof, all notices given by the Union to the ATC shall constitute sufficient notice by the Union to the individual Contractor.  In all other regards, this Section shall be strictly construed and enforced in favor of fully binding the individual Contractor to any successor CBA negotiated between the Union and the ATC, to any modifications, changes, amendments, supplements, extensions or renewals to the CBA negotiated between the Union and the ATC, and/or to any automatic extensions of the CBA.  To that end, notice by the individual Contractor to the ATC shall not be deemed to constitute notice to the Union, notice by the individual Contractor to the Union shall not be deemed to constitute notice to the ATC, and the requirements set forth herein regarding the content of the notice shall be strictly construed and applied.

EXHIBIT A

7.     The undersigned persons represent and warrant that they have full and sufficient authority to bind their respective principals and/or entities to this Memorandum Agreement, and all of its terms and conditions, and that their signatures below signify their intent to do so.

Company Name _____

Print Name _____

Signature _____

Title _____

Date _____

Street Address _____

City, State and ZIP _____

Telephone _____

Facsimile _____

Contractors License No. _____

Tile, Marble and Terrazzo Local No. 4 California
11818 Clark Street
Arcadia, California  91006
Telephone:     (626) 739-5600
Facsimile:      (626) 73-5610

Print Name _____

Signature _____

Title _____      Date _____

35

EXHIBIT A

44